IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | Chapter 7 |
| | ) | Case No. 18-11668 (JKS) |
| DECADE, S.A.C., LLC, et al., | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | Adv. No. 19-50095 (JKS) |
| | ) | |
| DAVID CARICKHOFF, solely in his | ) | |
| capacity as chapter 7 Trustee for the estates of | ) | C.A. No. 22-290 (MN) |
| DECADE S.A.C., *et al*., and XXIII | ) | C.A. No. 22-291 (MN) |
| CAPITAL LIMITED, | ) | C.A. No. 22-292 (MN) |
| | ) | |
| Appellants, | ) | |
| v. | ) | |
| | ) | |
| AARON GOODWIN and ERIC GOODWIN, | ) | |
| | ) | |
| Appellees. | ) | |

**MEMORANDUM OPINION**

Alan M. Root, ARCHER & GREINER, P.C., Wilmington, DE – Attorney for David W. Carickhoff, Chapter 7 Trustee.

Ricardo Palacio, ASHBY & GEDDES, P.A., Wilmington, DE; Patrick E. Fitzmaurice, Brian L. Beckerman, Stephanie M. Coughlan, PILLSBURY WINTHROP SHAW PITTMAN LLP, New York, NY – Attorneys for XXIII Capital Limited.

Frederick B. Rosner, Jason Gibson, THE ROSNER LAW GROUP LLC, Wilmington, DE; Keith Miller, Adam Mandelsberg, PERKINS COIE LLP, New York, NY – Attorneys for Aaron Goodwin and Eric Goodwin.

February 2, 2023
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE:**

Pending before the Court is the Joint Motion for Stay Pending Appeal (D.I. 13) ("the Stay Motion") filed by (i) David W. Carickhoff, solely in his capacity as chapter 7 trustee ("the Trustee") for the estates of Decade S.A.C., LLC ("Decade") and its parent entity, Gotham S&E Holdings, LLC ("Gotham," and, together with Decade, "the Debtors"); and (ii) XXIII Capital Limited ("23 Capital," and, together with the Trustee, "the Movants"), by and through disqualified special counsel Ashby & Geddes, P.A. and Pillsbury Winthrop Shaw Pittman LLP (together, "the Disqualified Counsel"), with respect to several appeals[1] from the Bankruptcy Court's February 17, 2022 Order (A0001-20)[2] ("the Disqualification Order"). The Court has considered the opposition (D.I. 15) filed by Aaron Goodwin and Eric Goodwin ("the Goodwins"), and the Movants' reply (D.I. 17) in further support of the Stay Motion. For the reasons set forth herein, the Court will deny the Stay Motion as moot and dismiss the appeals for lack of jurisdiction.

I.     **BACKGROUND**

    A.     **The Parties**

On July 16, 2018 ("the Petition Date"), the Debtors filed voluntary petitions for relief under chapter 7 of the Bankruptcy Code. (A0171). On July 17, 2018, the Trustee was appointed as chapter 7 trustee of the Debtors' estates. (A0202-03).

Prior to the Petition Date, Decade and certain of its non-debtor subsidiaries acquired certain sports and marketing agencies and/or receivables owing to such agencies. The primary assets acquired appear to be revenue streams associated with commissions and other amounts owed to

---

[1]     By Order dated March 31, 2022, the appeals were consolidated for procedural purposes only under lead case, C.A. No. 22-291 (MN), and that docket is cited herein.

[2]     The docket of the above-captioned adversary proceeding is cited herein as "Adv. .D.I. __." The Appendix (D.I. 14) filed in support of Appellants' Stay Motion (D.I. 13) is cited herein as "A__."

the sports and marketing agencies, including Goodwin Associates Management Enterprises, Inc. ("GAME"), purchased from Aaron Goodwin; and Goodwin Sports Management, Inc. ("GSM" and together with GAME, the "Goodwin Entities"), purchased from Aaron Goodwin's brother, Eric Goodwin. 23 Capital is a lender from which Decade sought financing for its potential purchase of the Goodwin Entities. On September 12, 2017, 23 Capital commenced litigation in the United States District Court for the Southern District of New York against the Debtors and others, including Aaron and Eric Goodwin ("the Goodwins") ("the SDNY Action"). (A0021-62). In that case, 23 Capital asserted claims for breach of contract and various forms of equitable relief. (A0046-61). In turn, the Goodwins and the Debtors filed counterclaims against 23 Capital, and crossclaims against each other. (A-0063-119; A0120-70).

### B. The Settlement Order and the Retention Order

Following the Petition Date, on October 15, 2018, the Trustee filed a motion seeking approval of a stipulation with 23 Capital (A0204-45) ("the Stipulation"), which provides, in relevant part, that:

- The Trustee will retain Special Counsel[3] to investigate and prosecute certain contingent litigation claims ("the Claims" as defined in the Stipulation);

- 23 Capital will make a $75,000 advance payment to the Trustee and will be primarily responsible for all fees and costs incurred by Special Counsel;

- The Trustee will waive and release any claims against 23 Capital . . . and agree to a $25 million allowed secured claim by 23 Capital in each of the Debtors' chapter 7 cases;

- The Trustee will confer with 23 Capital concerning all aspects of the Claims and [Special Counsel] shall take their direction from the Trustee. 23 Capital and the Trustee agree that the Trustee will not incur fees for the Professionals in excess of an amount that has been agreed upon by the Parties but remains confidential without the prior written consent of 23 Capital; and

---

[3] Pillsbury Winthrop Shaw Pittman LLP and Ashby & Geddes, P.A.

- Any recoveries on the Claims will be shared between the Trustee and 23 Capital in accordance with the "Recovery Sharing" calculation in the Stipulation.

(A0222-27). On November 5, 2018, the Bankruptcy Court approved the Stipulation (A0246-58) ("the Settlement Order"). On November 13, 2018, the Bankruptcy Court approved the Trustee's retention of Special Counsel (A0259-61) ("the Retention Order").

### C. The Appeal

On November 16, 2018, the Goodwins appealed the Stipulation Order and the Retention Order to this Court. (A0262-64). On February 5, 2020, this Court affirmed, holding, with respect to the Stipulation Order, "[t]he Bankruptcy Court properly considered the benefits to the estates from the settlement, weighed them against the risk of not settling, and ruled that the Trustee's business judgment in determining that the benefits outweighed the risks was sound" ("the District Court Order"). (A0265-86). Regarding the Retention Order, this Court held that "[t]he Stipulation creates a unity of interest between the parties and makes the law firms 'disinterested' within the meaning of the relevant provisions of the Bankruptcy Code" because "[f]ollowing the Bankruptcy Court's approval of the Settlement, any conflict between 23 Capital and the estates was resolved." (A0280-81; A0284-85).

### D. The Adversary Proceeding

On January 23, 2019, the Trustee, through Special Counsel, filed a complaint against Aaron, Eric, and Regina Goodwin seeking a declaratory judgment determining that certain property belonged to the Debtors' estates. (A0287-98). The Trustee asserted two claims for relief: (i) declaratory judgment that the sale of shares in GAME and GSM were validly consummated pursuant to a share purchase agreement between certain of the Debtors and the Goodwins ("the SPA") and that Decade S.A.C. Contracts, LLC is thereby the rightful owner of all shares in those

3

companies; and (ii) the imposition of a constructive trust over any valid GAME and/or GSM shares held by the Goodwins and, pursuant to 11 U.S.C. § 542(a), turnover of such shares to the Trustee.

On February 25, 2019, the Goodwins filed an answer asserting affirmative defenses and four counterclaims: (i) fraud in the execution; (ii) fraudulent misrepresentation; (iii) fraudulent inducement; and (iv) declaratory judgment that the SPA is unenforceable due to, *inter alia*, (a) lack of meeting of the minds as to the terms of the parties' agreement; (b) the Debtors' failure to satisfy required closing conditions; and (c) the Debtors' material breach of the SPA. (A0299-329). On March 18, 2019, the Trustee filed an answer to Goodwins' counterclaims with defenses. (Adv. D.I. 21). On August 23, 2019, Trustee filed a summary judgment motion requesting that the Bankruptcy Court grant the Trustee's claim for declaratory judgment and dismiss each of the Goodwins' counterclaims. (A0330-31).

On January 29, 2020, the Bankruptcy Court denied the Trustee's summary judgment motion as to his claim for declaratory judgment and granted the motion as to the Goodwins' counterclaims, dismissing the counterclaims for fraud in the execution, fraudulent misrepresentation, and fraudulent inducement ("the Summary Judgment Opinion and Order"). (A0332-33; A0364-65).

### E. The Liability Trial

The Bankruptcy Court conducted a trial on October 12, 13, 14, 15, 26 and 28 and November 16, 2021. On the first day of trial, the parties gave their opening statements and Aaron Goodwin testified on direct. (A0401-583). The next day, the Bankruptcy Court entered an Order: vacating the Summary Judgment Opinion and Order, denying the Trustee's Motion for Summary Judgment, and ordering that the trial proceed on the merits of the complaint and all counterclaims, including those previously dismissed. (A0584-86).

4

On October 22, 2021, the Goodwins filed a motion to bifurcate issues of liability and damages, arguing that "the counterclaims sounding in fraud would, if established, entitle the Goodwins to compensatory and/or punitive damages under applicable law. *See* Cal. Civ. Code §§ 1709, 3294." (A0587-91). Trustee opposed the motion. (A0596). On October 29, 2021, the Bankruptcy Court entered the Bifurcation Order, which provided, in part:

> *If* the Court finds liability on behalf of the plaintiff on his claim *or* the defendants on their counterclaims; the Court will schedule a trial on damages, if any, to be awarded at a time of mutual convenience to the Court and the parties.

(A0887).

### F. The Bankruptcy Court's Findings of Fact and Conclusions of Law

On December 27, 2021, the Bankruptcy Court entered *its Findings of Fact and Conclusions of Law,* finding in favor of the Goodwins and against the Trustee on his declaratory judgment claim. (A0891-962). The Bankruptcy Court found that "the Goodwins were defrauded by entering into a transaction which contained terms they specifically opposed, and others which were intentionally concealed" and that "23 Capital is implicated in the counts of fraud." (A0008; A0891-962). The Bankruptcy Court further ordered that "a trial to determine the amount of compensatory and punitive damages to be awarded to the Goodwins and whether to subordinate the claims of 23 Capital (and its successor and assigns) to the claims of the Goodwins" would be held at the Bankruptcy Court's earliest convenience. (A0890). Thereafter, the Bankruptcy Court held the adversary proceeding in abeyance due to the Honorable Christopher S. Sontchi's pending retirement.

### G. The Order to Show Cause

On January 4, 2022, the Bankruptcy Court *sua sponte* issued an Order on Rule to Show Cause (A0966-71) ("OSC"), requiring that the Trustee "show cause as to why the terms and

5

conditions of the employment of Special Counsel as set forth in the Stipulation should not be rescinded or modified in accordance with 11 U.S.C. § 328(a)," and scheduling an evidentiary hearing for February 14, 20225 ("the OSC Hearing"). (A0970). During a status conference held February 11, 2022, the Bankruptcy Court outlined its specific concerns with the Stipulation, "[i]n light of the record that was developed" during the trial on liability:

> 1. "I would like the stipulation amended to make it clear that 23 Capital has zero detail [sic] authority over settlement. I understand from the papers that's been agreed, but I haven't seen and not approved, a stipulation to that." (A1002).
>
> 2. "I think it's important that special counsel be required to file fee applications all the way . . . since they were retained . . . ." (A1002).
>
> 3. "[A]ny payments that have been received that are ultimately disallowed have to be disgorged." (A1003).

The Bankruptcy Court observed that such modifications to the Stipulation that would resolve the OSC. (A1002-03). Disqualified Counsel advised the Bankruptcy Court that the requested modifications to the Stipulation were not acceptable to 23 Capital. (A1003-05). Given Disqualified Counsel's failure to assuage the Bankruptcy Court's concerns with the Stipulation, the Bankruptcy Court determined it was necessary to go forward with an evidentiary hearing on the OSC. (*Id*).

### H. The Disqualification Order

On February 17, 2022, the Bankruptcy Court entered the Disqualification Order vacating with prejudice the Stipulation and the Retention Order. (A0001-20). The Bankruptcy Court held that "[d]ue to the Court's vacatur of summary judgment on the second day of trial and subsequent findings of fraud after trial (including possible suspect behavior by 23 Capital)" an "actual, non-waivable" conflict of interest under 11 U.S.C. § 105 and 11 U.S.C. § 327 existed because: (1) "Special Counsel [was] acting on behalf of the Trustee throughout this litigation, whilst also

6

re-negotiating the Stipulation on behalf of 23 Capital"; and (2) Special Counsel was representing the Trustee and 23 Capital in this action while also "negotiating tolling agreements on behalf of 23 Capital with the law firm that represented 23 Capital, Loeb & Loeb LLP . . . and the law firm that represented Decade's principals, Gordon Rees Scully Mansukhani, LLP." A0014-15. On March 3, 2022, the Trustee and 23 Capital filed their respective notices of appeal of the Disqualification Order. (A1123-25; A1126-51). On March 7, 2022, the Trustee and 23 Capital filed a *Joint Motion for An Immediate Stay of All Proceedings Pending Appeal of the Disqualification Order*. (A1152-83). On March 11, 2022, the Honorable Christopher S. Sontchi held hearing and made an oral ruling denying the stay motion. (*See* A1242-44). On March 14, 2022, the Bankruptcy Court entered an order denying the stay motion but continuing without dates the Scheduling Order and damages trial pending reassignment to a new Bankruptcy Court Judge. (A1184-85).

On April 26, 2022, at the parties' request, the Court referred this matter to mediation. (D.I. 12). On April 28, 2022, Movants filed the Stay Motion in this Court. The parties later requested that the Court defer ruling on the Stay Motion pending conclusion of mediation held for June 16, 2022. (D.I. 19). On July 13, 2022, the parties submitted a letter informing the Court that mediation was unsuccessful. (D.I. 20).

### I. Remaining Litigation in the Bankruptcy Court

Following Judge Sontchi's retirement, the Chapter 7 cases (and associated adversary proceedings) were transferred to the Honorable J. Kate Stickles. (A1227). On July 26, 2022, Judge Stickles held a status conference and ordered additional briefing on the Goodwins' entitlement to damages. (Adv. D.I. 336). Following briefing (Adv. D.I. 332, 337, 338), on January 13, 2023, the Bankruptcy Court issued an Opinion determining that: (i) the Goodwins may seek damages beyond the declaratory relief sought in the Answer, and (ii) that the bankruptcy

claims administration and reconciliation process is the appropriate forum for the Goodwins to pursue their claims for compensatory and punitive damages. (Adv. D.I. 342). Based on the economic realities of the case, however, the Bankruptcy Court cautioned against a separate damages trial. (*See id*. at 11-13).

The Stay Motion is fully briefed. (D.I. 13, 15, 17). The Court did not hear oral argument because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument.

## II.     APPLICABLE STANDARD

"The granting of a motion for stay pending appeal is discretionary with the court." *In re Trans World Airlines, Inc.*, 2001 WL 1820325, at *2-3 (Bankr. D. Del. Mar. 27, 2001). A stay pending appeal is an "extraordinary remedy." *In re W.R. Grace & Co.*, 475 B.R. 34, 205 (D. Del. 2012) (quoting *United States v. Cianfrani*, 573 F.2d 835, 846 (3d Cir. 1978)). The movant bears the burden of establishing that imposition of a stay is warranted. In determining whether the moving party met its burden, courts in the Third Circuit consider the following factors:

> (1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether the issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*In re Revel AC, Inc*., 802 F.3d 558, 568 (3d Cir. 2015) (citing *Hilton v. Braunskill,* 481 U.S. 770, 776 (1987)). "'[T]he most critical' factors, according to the Supreme Court, are the first two: whether the stay movant has demonstrated (1) a strong showing of the likelihood of success and (2) that it will suffer irreparable harm." *Id*. (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)). Because all four factors are interconnected, the Third Circuit has instructed that the analysis should proceed as follows:

> Did the applicant make a sufficient showing that (a) it can win on the merits (significantly better than negligible but not greater than 50%) *and* (b) will suffer irreparable harm absent a stay? If it has, we balance the relative harms considering all four factors using a 'sliding scale' approach. However, if the movant does not make the requisite showings on either of these first two factors, the inquiry into the balance of harms and the public interest is unnecessary, and the stay should be denied without further analysis.

*Id*. at 571 (internal quotations and citation omitted) (emphasis in original).

### III.  JURISDICTION

The Court must make a threshold determination of jurisdiction. This Court has jurisdiction to hear appeals "from final judgments, orders, and decrees," and "with leave of the court, from other interlocutory orders and decrees." 28 U.S.C. § 158(a).

The parties disagree as to whether the Disqualification Order is a final, appealable order. The Goodwins argue that this appeal was taken impermissibly from an interlocutory order without leave of court, and therefore must be dismissed under 28 U.S.C. § 158(a)(3). (*See* D.I. 15 at 4). According to the Goodwins, "there is no jurisdictional basis for an immediate appeal of an attorney disqualification order," and the Court therefore lacks jurisdiction to consider the Stay Motion. (*Id.* at 10-11). Movants, on the other hand, assert that the Goodwins rely on the wrong legal standard. Movants argue that attorney disqualification orders in the bankruptcy context—where finality is considered "in a more pragmatic and less technical way"—are immediately appealable, and therefore the Court has jurisdiction over the appeal and may consider the Stay Motion. (D.I. 17 at 3). Movants further argue that they have met their burden of establishing that imposition of a stay of the Disqualification Order pending their appeal is warranted. (*Id.* at 4-9).

### IV.  ANALYSIS

In *Richardson-Merrell,* the trial court disqualified counsel and their law firm and revoked their *pro hac vice* admissions for releasing certain information to the media and improper contacts

9

with a witness.  The Court of Appeals reversed after holding that it had jurisdiction to entertain the appeal pursuant to 28 U.S.C. § 1291.  The Supreme Court granted certiorari and reversed. *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 438-40 (1985).  The Supreme Court noted that it had previously held that an order denying a motion to disqualify counsel in a civil case was not subject to immediate appeal but it had left open the issue of the appealability of an order granting disqualification.  *Id*. at 431-32 (citing *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368 (1981)).  The Court then noted that it thereafter had held that "a district court's pretrial order granting disqualification of defense counsel in a criminal case was not immediately appealable." *Id*. at 432 (citing *Flanagan v. United States*, 465 U.S. 259 (1984)).  The Court ultimately held that the same was true for a disqualification order in a civil case.  *Id*. at 440.

      Because an order disqualifying counsel in a civil case is not a final judgment on the merits of the litigation, the Court considered whether orders disqualifying counsel may fall within the "collateral order" exception to the final judgment rule—an exception recognized for a "small class" of prejudgment orders that "finally determine claims of right separable from, and collateral to, rights asserted in the action, [and are] too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Id*. at 430 (quoting *Cohen v. Beneficial Industrial Loan Corp*., 337 U.S. 541, 546 (1949)).  To fall within the collateral order exception, an order must at a minimum satisfy three conditions: It must "conclusively determine the disputed question," "resolve an important issue completely separate from the merits of the action," and "be effectively unreviewable on appeal from a final judgment."  *Id*. at 431 (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978)).

Regarding the second condition, the Court stated that a disqualification order, "though 'final,' is not independent of the issues to be tried." *Id.* at 439. The Court noted that "[o]nly after assessing the effect of the ruling on the final judgment could an appellate court decide whether the client's rights had been prejudiced. If respondent were to proceed to trial and there receive as effective or better assistance from substitute counsel than the disqualified attorney could provide, any subsequent appeal of the disqualification ruling would fail." *Id*. The Court further held that a "disqualification order can be reviewed as effectively on appeal of a final judgment as on an interlocutory appeal," and such orders therefore failed to satisfy the third condition of the collateral order exception. *Id*. at 438.

In *Cunningham*, after holding that the plaintiff's attorney engaged in a pattern of discovery abuses, a district court disqualified that attorney from the case and ordered payment of $1,494 in fees and costs. *See Starcher v. Correctional Medical Systems, Inc*., 144 F.3d 418, 420-22 (6th Cir. 1998) (setting forth procedural history). The attorney appealed and the Sixth Circuit dismissed the appeal for lack of jurisdiction. *See id*. at 425. The Supreme Court affirmed. *Cunningham v. Hamilton County, Ohio*, 527 U.S. 198 (1999). The Supreme Court stated, "[w]e do not think ... that appellate review of a sanctions order can remain completely separate from the merits." *Cunningham*, 527 U.S. at 205. In particular, "[a]n evaluation of the appropriateness of sanctions may require the reviewing court to inquire into the importance of the information sought [in discovery] or the adequacy or truthfulness of a response." *Id*. The Court further determined that the sanctions order could be effectively reviewed on appeal from a final judgment. *Id*. at 206.

Based on the Supreme Court's decisions in *Richardson-Merrell* and *Cunningham*, the Third Circuit dismissed an appeal from a district court's attorney disqualification order pursuant to § 1291. *See Comuso v. Nat'l R.R. Passenger Corp*., 267 F.3d 331, 336, 339 (3d Cir. 2001). As

the Third Circuit highlighted in *Comuso*: "Significantly, the [Supreme] Court rejected a case-by-case approach to determining whether a particular ruling would be immediately appealable." *Id*. at 336 (citing *Richardson-Merrell*, 472 U.S. at 439). The Supreme Court recognized that "[e]ven if some orders disqualifying counsel are separable from the merits of the litigation, many are not." *Id*. (quoting *Richardson-Merrell,* 472 U.S. at 439). "Therefore, [the Supreme Court] concluded that 'orders disqualifying counsel in civil cases, *as a class*, are not sufficiently separable from the merits to qualify for interlocutory appeal." *Id*. (quoting *Richardson-Merrell,* 472 U.S. at 440 (emphasis added by *Comuso* court)). The Third Circuit further quoted the Supreme Court's decision in *Cunningham*:

> [W]e do not think that the appealability of a Rule 37 sanction imposed on an attorney should turn on the attorney's continued participation [in the litigation]. Such a rule could not be easily administered . . . [and] could be subject to abuse if attorneys and clients strategically terminated their representation in order to trigger a right to appeal with a view to delaying the proceedings in the underlying case.

*Id.* at 338 (quoting *Cunningham*, 527 U.S. at 209). The Third Circuit concluded that, "The fact that a trial court's order disqualifies an attorney from a case (meaning that the attorney is no longer part of the litigation) does not make that order immediately appealable. Rather, that attorney must monitor the litigation and wait to appeal the sanctions order after there has been a final judgment on the merits." *Id*. at 339.

Here, there has been no final judgment on the merits. Although the Bankruptcy Court has issued an order on the merits of the claims and counterclaims, no trial on the Goodwins' damages claims has been conducted, nor have those claims been otherwise reconciled in the claims administration process. The Court agrees with the Goodwins that the rule set forth in *Comuso* requires dismissal of the present appeals.

Notwithstanding the Third Circuit's guidance on this issue, Movants urge the Court to apply the multi-factor test for determining finality of orders in bankruptcy cases applied by the Third Circuit in *BH&P*: "the impact of the matter on the assets of the bankruptcy estate, the preclusive effect of a decision on the merits, and whether the interests of judicial economy will be furthered." *In re BH&P, Inc.*, 949 F.2d 1300, 1306-07 (3d Cir. 1991) (quoting *F/S Airlease II, Inc. v. Simon*, 844 F.2d 99, 104 (3d Cir. 1988), *cert. denied*, 488 U.S. 852 (1988)). In that case, the Third Circuit concluded that a district court order removing a trustee, and disqualifying trustee's counsel in certain matters due to an actual conflict of interest, was a final, appealable order. *See id*. at 1307. According to Movants, *Comuso* and the Supreme Court precedent upon which it relies—*Richardson-Merrell* and *Cunningham*—were "limited to non-bankruptcy cases" and did not disturb *BH&P* and its progeny. (*See* D.I. 17 at 4 n.4 (citing *In re AroChem Corp.*, 176 F.3d 610, 619 (2d Cir. 1999))). The Court finds no such limitation in those decisions, nor do Movants cite any subsequent decisions excepting bankruptcy cases from the Third Circuit's rule that attorney disqualification orders are not immediately appealable and should be appealed only after there has been a final judgment on the merits. *BH&P* predates the Third Circuit's guidance in *Comuso*. The multi-factor test for determining finality of orders in bankruptcy cases does not account for the various concerns recognized in *Comuso,* and the cases on which it relies—namely, that a disqualification order, "though 'final,' is not independent of the issues to be tried." *Richardson-Merrell*, 472 U.S. at 439. Moreover, as the Third Circuit explained in *Comuso*, "the Supreme Court has consistently rejected a case-by-case approach in deciding whether an order was separate from the merits of the litigation in favor of a *per se* rule that sanctions orders are inextricably intertwined with the merits of the case." *Comuso*, 267 F.3d at 339 (citing *Cunningham,* 527 U.S. at 206; *Richardson-Merrell*, 472 U.S. at 439).

Finally, Movants cite this Court's decision in *In re NNN 400 Capital*, 632 B.R. 243 (D. Del. 2021), which, Movants argue, treated an order disqualifying special counsel as final and immediately appealable, albeit without any examination or discussion of jurisdiction. But the Court correctly determined that the order disqualifying special counsel was final and immediately appealable in that case, as a final judgment on the merits of the underlying case was entered on August 10, 2020[4]—prior to the entry of the attorney disqualification order (September 4, 2020),[5] and prior to this Court's affirmance thereof (September 29, 2021).[6]

## V. CONCLUSION

As the Court lacks jurisdiction over the non-final Disqualification Order, the appeal must be dismissed. Accordingly, the Stay Motion is denied as moot. An appropriate order follows.

---

[4] *See Rubin & Rubin, P.A. v. Office of the United States Trustee, et al.*, Adv. No. 18-50384-JTD (Bankr. D. Del.), Adv. D.I. 785 (findings of fact and conclusions of law) issued Aug. 10, 2020; Adv. D.I. 786 (final judgment in favor of defendants on all counts of the second amended complaint) issued Aug. 10, 2020.

[5] *See Rubin & Rubin, P.A. v. Office of the United States Trustee, et al.*, Adv. No. 18-50384-JTD (Bankr. D. Del.). Appellant law firm Rubin & Rubin, P.A. filed various appeals with respect to two separate sanctions orders issued by the Bankruptcy Court: (1) Order re Motion for Clarification (Adv. D.I. 810), dated September 4, 2020 ("Clarification Order"), which set a deadline for the payment of certain sanctions previously ordered in an August 9, 2019 Order (Adv. D.I. 247-1)—as modified by a prior reconsideration order (Adv. D.I. 302, 303)—in connection with false and/or materially incomplete disclosures regarding the appellant's retention as special litigation counsel to debtors under 11 U.S.C. § 327(e); and (2) the Memorandum Opinion and Order, dated September 4, 2020 (Adv. D.I. 811) ("Disqualification Order"), which disqualified appellant from serving as debtors' counsel, denied the law firm's fees, and directed the law firm to return payments to the debtors. Appellant Rubin Law Associates, P.A. also appealed the Disqualification Order.

[6] Affirming both the September 4, 2020 Clarification Order and the September 4, 2020 Disqualification Order on appeal, this Court concluded that, "Both Orders are final, and the Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1)." *In re NNN 400 Capitol Center 16 LLC, et al.*, 632 B.R. 243, 249 (D. Del. 2021) (Opinion and Order issued Sept. 29, 2021) *aff'd* 2022 WL 17831445 (3d Cir. Dec. 21, 2022).